CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JAN 05 2024

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

|  |  |  |
|---|---|---|
| WILLIAM L. SMITH, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:23-cv-00003 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LOUIS DEJOY, POSTMASTER GENERAL, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff William L. Smith contends that he has been the victim of various acts of discrimination while working as a mail carrier for the U.S. Postal Service ("USPS") in Danville, Virginia. On April 17, 2023, Defendant Louis DeJoy ("DeJoy"), in his capacity as Postmaster General of the USPS, filed a motion to dismiss parts of Smith's *pro se* complaint for failure to state a claim. (ECF No. 8.) Having considered the parties' briefs and the applicable law, the court will grant DeJoy's motion. Accordingly, only Smith's claims based on Allegations 5, 6, and 7 (as defined below), which are alleged in *both* Smith's complaint and his Equal Employment Opportunity Commission ("EEOC") filing No. 4B-230-0150-21, survive.

## I. BACKGROUND

The facts are taken from Smith's *pro se* complaint and, at this stage, are accepted as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Smith works for USPS as a mail carrier in Danville, Virginia. In his complaint, Smith alleges numerous instances between July 21, 2019, and March 29, 2022, that he believes constituted unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e *et seq.* ("Title VII"). (*See generally* Compl. [ECF No. 2].) Although Smith does not state whether each allegation is being brought as an independent cause of action (as opposed to all of his allegations constituting a single hostile-work-environment claim), in his motion to dismiss, DeJoy attacks the complaint as if it brings individual claims. Moreover, Smith has raised the same allegations in several different filings with the EEOC, suggesting that he intended to assert individual claims regarding each allegation.[1]

Smith makes 12 discrete allegations, each of which, he contends, violated Title VII:

1. On July 21, 2019, Danville Postmaster Karen Hodges ("Hodges") asked questions and made comments about Smith's skin color, his need to wear sunscreen, and the "du-rag" he was wearing. Hodges later asked Smith to remove the "du-rag." ("Allegation 1"; Compl. at 6.)

2. On August 1, 2019, Hodges cancelled Smith's previously approved leave and added Smith to the work schedule, thwarting court-ordered visitation with his children. Smith claims that Hodges said: "I'm sure you wish your life never turned out the way it did. It's not my fault who you chose to have your children with." ("Allegation 2"; *id.*)

3. On July 11, 2020, Hodges asked Smith for medical information concerning a Family and Medical Leave Act ("FMLA") case in which he was involved,[2] which Smith says was protected by the Health Insurance Portability and Accountability Act ("HIPAA"). On July 15, 2020, after Smith refused to provide the requested information, he claims he was suspended and escorted out of the building. ("Allegation 3"; *id.* at 6–7.)

4. On June 29, 2021, Smith was "harassed" by "the supervisor customer services" about providing a doctor's note for his leave on June 28–29, 2021. He does not explain what constituted the harassment he allegedly suffered. ("Allegation 4"; *id.* at 7.)

---

[1] Of course, the court is obligated to give Smith's *pro se* complaint a lenient interpretation. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As such, and as discussed more fully below, this court's ultimate conclusion will not limit Smith's ability to put forth any relevant evidence on his remaining claims.

[2] Information regarding Smith's FMLA case is found in an attachment to Smith's complaint labeled H9. H9 is a letter from Dr. Susan M.G. Bell, LCMHC, NCC, Ph.D.-NCCA, stating that Smith has sessions with Dr. Bell to manage his panic attacks and severe anxiety due to the harassment and hostility he allegedly faces at work.

5. On July 22, 23, and 27, 2021, management failed to provide Smith with a Long-Life Vehicle ("LLV") (*i.e.*, a mail truck) for his mail route. ("Allegation 5"; *id.*)

6. On July 27, 2021, Smith was denied overtime. ("Allegation 6"; *id.*)

7. Also on July 27, 2021, Smith received a 14-day suspension. He claims his suspension was based on an accusation that he pushed his parcel buggy through double doors and almost hit two carriers. Hodges told Smith that Phylicia Cobbs informed her of the incident. When Smith's labor union, the National Association of Letter Carriers ("NALC") Branch 595, interviewed Cobbs, she denied making any such statement. Hodges then ended Smith's suspension, and Smith received back wages for the time he was out. ("Allegation 7"; *id.*)

8. A supervisor has followed Smith more than the average mail carrier. He claims that while most mail carriers are observed once or twice a year, he was observed once or twice a week. ("Allegation 8"; *id.*)

9. Smith claims that the Carrier Supervisor, Lisa Gladden ("Gladden"), "continuously" sexually harassed him. He claims that Gladden asked Smith to have sex with her during working hours and approached him on his route in a see-through gown. Gladden also sent him several texts about her "lust" for him. ("Allegation 9"; *id.* at 7–8.)

10. Smith encountered an aggressive dog while on his mail route. Following this incident, at the direction of his NALC president, Smith filed a Report of Hazard, Unsafe Condition or Practice (PS Form 1767). He asserts, however, that management never investigated his complaints about the dog. Then, despite purportedly following Gladden's directions to "band up the mail" and bring it back to the post office because of the dog, a pre-disciplinary investigation ("PDI") was instituted against Smith for bringing mail back. Smith does not state the outcome of the PDI. ("Allegation 10"; *id.* at 8.)

11. On March 29, 2022, Gladden approached Smith in a "hostile" manner about his "leave", which the court infers was his scheduled medical leave from April 13–July 24, 2022. ("Allegation 11"; *id.* at 8–9.)

12. Also on March 29, 2022, Gladden instructed Smith to carry mail on a route that Hodges had previously told him he would not carry again due to an incident with a customer. Smith informed Gladden of Hodges's directive but Gladden still made him take the route. Smith feared for his safety on this route. ("Allegation 12"; *id.*)

Most—but not all—of these allegations were included in Smith's Equal Employment

Opportunity ("EEO") complaints. (*See* ECF Nos. 9-1, 9-2, 9-3, 9-4.)

In his motion to dismiss, DeJoy appropriately organizes Smith's 12 incidents according to his three formal EEO complaints and one informal EEO complaint. (Def.'s Br. Supp. Mot. Dismiss [hereinafter "Def.'s Br."] at 4 [ECF No. 9].) The formal complaints are identified as: (1) Case Number 4C-250-0056-19,which comprises Allegations 1 and 2 ("Case No. 19"); (2) Case Number 4C-250-0042-20, which comprises Allegation 3 ("Case No. 20"); and (3) Case Number 4B-230-0150-21, which comprises Allegations 4–7 ("Case No. 21"). The informal complaint is identified as Case Number 4B-230-0178-22, which encompasses Allegations 10– 12 ("Informal Complaint"). (*Id.*) In his motion, DeJoy includes Allegations 8 and 9 in his discussion of the Informal Complaint, but besides that one categorization, he does not discuss those allegations again. (*See id.* at 14) On the record before the court, it does not appear that Smith raised Allegation 8 or 9 in any EEO complaint, including the Informal Complaint.

Case No. 19 was filed on October 17, 2019. (Def.'s Br. Ex. A [ECF No. 9-1].) In his formal complaint, Smith discusses an uncomfortable conversation he had with Hodges regarding race, sunscreen, and head coverings; being placed on the work schedule even after he was approved for leave a month in advance; and an allegedly humiliating conversation regarding that leave and being able to pick up his daughters. (*Id.* at 4–7) Smith believes that racial discrimination was Hodges's underlying motivation for making those comments. (*Id.* at 7) An EEOC Administrative Judge ("AJ") determined that "the record evidence [did] not support a finding of discrimination." (Def.'s Br. Ex. F at 3 [ECF No. 9-6].) Smith appealed the EEOC's initial decision, but the final decision affirmed the AJ. The EEOC issued its final decision, and included a notice of the right to file civil action, on February 3, 2022. (Def.'s Br. Ex. G [ECF No. 9-7].)

- 4 -

Smith filed Case No. 20 on August 17, 2020. (Def.'s Br. Ex. B [ECF No. 9-2].) In that formal complaint, Smith states that he learned he was being harassed for being black, that Hodges was upset Smith filed a complaint and was trying to get the other supervisors to "go on a witch hunt," that Gladden heard Hodges refer to African Americans as "monkeys," and that he was told he would be suspended because he did not want to share information that he believed to be protected by HIPAA. (*Id.* at 5–6.) Smith also discussed the need to seek professional help for depression, anxiety, and headaches that he claims are the result of the hostile work environment. (*Id.* at 6.) An EEOC AJ granted summary judgment to the USPS on September 19, 2022, and that decision was implemented by the USPS on October 6. (Def.'s Br. Ex. H [ECF No. 9-8].) It does not appear that Smith appealed the AJ's decision.

Smith filed Case No. 21 on October 28, 2021. (Def.'s Br. Ex. C [ECF No. 9-3].) In that formal complaint, Smith goes into detail about an incident where he was stung by a bee and needed medical attention. Smith alleges that he then had a miscommunication with his supervisors about his doctor's note and leave, which caused him to experience an "episode." (*Id.* at 4) Next, Smith talks about an issue with access to LLVs. Smith then states he experienced another "episode" after putting in his overtime but being told he "only earned ten minutes." (*Id.* at 5.) The last major incident Smith discussed was when Hodges allegedly asked for his badge and put him on emergency placement for two weeks without pay for allegedly almost hitting a mail carrier with "the cage." (*Id.*) Smith was reinstated and awarded backpay, however, for the time that he was on the emergency placement. (*Id.*) Smith concludes by stating that he feels these incidents occurred as retaliation for his past complaints and demonstrate a hostile work environment. (*Id.* at 5–6.) An EEOC AJ granted the USPS's

motion for summary judgment on November 18, 2022, and the USPS implemented that decision on November 30. (Def.'s Br. Ex. J [ECF No. 9-10].) It does not appear that Smith appealed the AJ's decision.

Smith filed his Informal Complaint on April 7, 2022. (Def.'s Br. Ex. D [ECF No. 9-4].) This informal complaint deals with the incident involving the aggressive dog and his PDI, Gladden's hostility because of Smith's leave request, and being put on an unsafe route. Smith believes that USPS management's lack of concern about putting him on the route with the aggressive dog and problematic customer is putting his safety in jeopardy. (*Id.* at 3–4.) On May 10, 2022, a USPS EEO Alternative Dispute Resolution Specialist advised Smith that he had two options for his informal complaint: he could (1) "do nothing at which point [his] inquiry [would] expire and no further action [would] be taken on [his] counseling request," or (2) elect to file a formal complaint." (*Id.* at 6.) He was advised that he had 15 days to file such a complaint, but it does not appear that he ever did so.

Smith filed the instant matter in this court on January 31, 2023. In response, DeJoy moved to dismiss all of Smith's claims, except for the two claims based on Allegations 5 and 6. (*See* Mot. Dismiss at 1 [ECF No. 8].) DeJoy argues that the claims in Case Nos. 19 and 20 were untimely filed. (*Id.*) DeJoy further contends that Smith failed to exhaust his administrative remedies regarding his Informal Complaint. (*Id.*) And while DeJoy agrees that the allegations Case No. 21 were exhausted with the EEOC and timely filed, he asserts that two of the four—

Allegations 4 and 7—fail to state a claim. The court has reviewed the pleadings and parties' filings and this matter is ripe for disposition.[3]

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertions devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 555, 557).

While a court is usually confined to reviewing the four corners of the complaint when ruling on a motion to dismiss, a court may consider a document submitted with a motion to dismiss "that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Courts can treat such documents as if they had been attached to the complaint. *See id.*

---

[3] The court cancelled oral argument on the motion to dismiss because the evidence and positions of the parties were adequately set forth in their written filings and oral argument would not aid in the decisional process.

In the present case, Plaintiff is proceeding without a lawyer. It is well-settled that a *pro se* plaintiff's complaint "'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle*, 429 U.S. at 106 (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### III.   ANALYSIS

DeJoy contends that some of Smith's allegations were included in EEO complaints that, while exhausted, were not timely brought in this court. (Def.'s Br. at 12—13.) He also contends that some of Smith's other allegations were not properly exhausted before his present suit was filed. (*Id.* at 15–16.) Of the four allegations that arise under Case No. 21—which DeJoy concedes were properly exhausted *and* timely filed in this court—he contends that two fail to state a claim upon which relief can be granted because Allegation 4 is insufficient to state a hostile-work-environment claim and any damages related to Allegation 7 were "cured." (*Id.* at 16–22.)

### A.  Consideration of DeJoy's Exhibits on a Motion to Dismiss

As a preliminary matter, the court must determine whether it may consider the numerous exhibits on which DeJoy relies in support of his motion to dismiss, but that were not included with Smith's Complaint. (*See generally* Def.'s Br.) Ordinarily, the court's review on a motion to dismiss is cabined to the four corners of the complaint, but the Fourth Circuit has held that "[a] court may consider a document submitted with a motion to dismiss that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166.

In his motion to dismiss, DeJoy attached 11 exhibits, which he labels Exhibit A–K. While none of these exhibits were expressly incorporated in Smith's complaint, Exhibits A–J are nevertheless integral to the complaint. These exhibits include Smith's own EEO complaints, the applicable EEOC decisions, and notices of final agency action. Smith's complaint could not properly be in federal court without their existence. *See Ridenour v. Andrews Fed. Credit Union*, 897 F.2d 715, 717 (4th Cir. 1990) (noting "a timely charge with the Equal Employment Opportunity Commission" is "a jurisdictional prerequisite to a civil suit under Title VII"). Exhibits A–J speak to whether Smith exhausted his administrative remedies *and* timely filed his complaint—*i.e.*, whether this action has been properly brought. *See Sloop v. Mem. Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999). The court may therefore consider these exhibits in addressing the arguments raised in DeJoy's motion to dismiss.

But the court cannot, and will not, consider Exhibit K, which is a printout of a search result from USPS's internal complaint system that provides information about Smith's prior complaints. (Def.'s Br. Ex. K [ECF No. 9-11].). While Exhibit K is helpful in demonstrating a succinct timeline of Smith's EEO complaints, it was not relied on nor is it integral to Smith's Complaint, and it is duplicative of the information in Exhibits A–J.

## B.  Title VII Civil Action Requirements: Timeliness and Exhaustion

### 1.  Timeliness

Title VII requires employees to bring suit in a district court "within 90 days of receipt of notice of final action taken . . . by the Equal Employment Opportunity Commission." 42 U.S.C. § 2000e-16(c); *see also id.* § 2000e-5(f)(1); *Fort Bend Cnty., Tx. v. Davis*, 139 S. Ct. 1843, 1847 (2019). If the employee fails to bring a complaint after 90 days, he has forfeited his right

to pursue his Title VII claim in court. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 150 (1984).

The record is clear—and Smith does not dispute—that the EEOC issued its final agency action for Case No. 19 on February 3, 2022. (Def.'s Br. Ex. G.) Final agency action for Case No. 20 was issued on October 6, 2022. (Def.'s Br. Ex. H.) Smith's Complaint was filed in this court on January 31, 2023, which is more than 90 days after final agency decisions were made in each case.[4] In his response, Smith counters that Case Nos. 19 and 20 were timely filed but does not offer any facts to support this legal conclusion, and the record belies his argument. Insofar as Smith raises claims related Case Nos. 19 and 20, they are untimely and will be dismissed.

### 2. Exhaustion

Title VII also requires employees to exhaust administrative remedies before they can file suit in federal court. *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019). The exhaustion requirement holds that a plaintiff cannot pursue redress in federal court for conduct they failed

---

[4] Smith first attempted to file the present suit on January 4, 2023, exactly 90 days from the final agency action in Case No. 20, by filing a complaint and a request to proceed *in forma pauperis*. The court, in exercising its screening duty under 28 U.S.C. § 1915(e)(2)(B), dismissed the threadbare complaint for failure to state a claim on January 24, 2023. *See Smith v. DeJoy*, No. 4:23-cv-00001, 2023 WL 372081, at *2 (W.D. Va. Jan. 24, 2023). Because the court was in the process of determining whether his suit court proceed, his timeline to file this action was tolled while the court reviewed and ruled on his application to proceed *in forma pauperis*. *See Bishop v. Apfel*, 91 F. Supp. 2d 893, 894 (W.D. Va. 2000) ("[T]he best rule is that where the plaintiff submits an IFP application, the relevant period of limitations is suspended until the court rules on the application. If the application is denied, the plaintiff still has the time remaining under the statute to pay the filing fee and commence the action."); *see also Williams-Guice v. Bd. of Educ.*, 45 F.3d 161, 164 (7th Cir. 1995) ("The [T]enth [C]ircuit's answer in *Jarrett* to the question 'What happens if the judge denies the application?' is that the clock resumes ticking on the date of denial."). By filing the present complaint a week after its initial dismissal, the total date between the EEOC's final decision in Case No. 20 and the initiation of this lawsuit is 97 days, meaning it is ultimately untimely.

- 10 -

to allege before the EEOC in the first instance.[5] *See Tillbery v. Kent Island Yacht Club, Inc.*, 461 F. App'x 288, 290 (4th Cir. 2012). To properly exhaust a claim, an employee must first raise the issue within the agency through an EEO counselor within 45 days of the allegedly discriminatory conduct. 29 C.F.R. § 1614.105(a). If the counseling does not result in a favorable resolution for the employee within 30 days, the employee then has 15 days to file a formal complaint with the agency's EEO. *Id.* § 1614.105(d). As noted, the Supreme Court has held that this filing requirement is mandatory, and the court must enforce it if raised. *Fort Bend Cnty.*, 139 S. Ct. at 1849, 1851.

On May 10, 2022, Smith was informed that there was no resolution to his counseling request in his Informal Complaint and that he could either (1) take no further action or (2) file a formal complaint. (Def.'s Br. Ex. D at 6.) It is uncontested that Smith did not file a formal complaint. Therefore, Smith did not exhaust his administrative remedies with regard to his Informal Complaint (and Allegations 10–12 contained therein).

Smith points to *Adamov v. U.S. National Bank Association*, 726 F.3d 851 (6th Cir. 2013), to argue that he is not barred from bringing this suit insofar as that court held that exhaustion is not a *jurisdictional* requirement under Title VII. *Id.* at 855–56. He is correct, but that does nothing to save his claims. While the exhaustion requirement is not jurisdictional (meaning the court has the power to adjudicate the claim whether or not it was exhausted), it remains a mandatory claims-processing rule that the court is obligated to enforce. *See Fort Bend Cnty.,* 139

---

[5] There are, of course, exceptions to this general rule. *See Shumate v. City of Lynchburg,* No. 6:23-CV-00032, 2023 WL 5699107, at *3 (W.D. Va. Sept. 5, 2023); *see also Via v. Commc'ns Corp. of Am., Inc.*, 311 F. Supp. 3d 812, 820 (W.D. Va. 2018) (permitting a plaintiff to raise, for the first time in federal court, the claim that her employer retaliated against her for filing with the EEOC).

S. Ct. at 1849. Because Smith did not file a formal complaint related to Allegations 10–12, he did not exhaust the administrative remedies available to him. *See* 29 C.F.R. § 1614.105(d). Accordingly, those allegations have not been properly exhausted and are not independently actionable in this court.

Smith also failed to exhaust remedies relating to Allegations 8 and 9. Allegation 8 states that Smith was followed for observation more than the average postal worker, and Allegation 9 alleges sexual harassment by Gladden. Because these allegations were never presented to the EEOC in the first instance, they were not properly exhausted, so they cannot form the basis of a stand-alone claim in this court and will be dismissed.

## C.   Failure to State a Claim for Smith's Timely Filed Claims

In Case No. 21, Smith asserted the claims that comprise Allegations 4–7 in his Complaint. Although DeJoy concedes that Case No. 21 was properly exhausted and Smith's complaint was timely filed on that charge, DeJoy argues that two of these Allegations—4 and 7—should be dismissed. (Def.'s Br. at 17.)

First, DeJoy argues that Allegation 4, relating to alleged harassment over a doctor's note, is not sufficient to allege a hostile-work-environment claim. (*Id.*) To prove a hostile-work-environment claim, "a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (quoting *Mosby–Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010)). An isolated instance of harassment can be the basis of a hostile work environment only if the

incident is "extremely serious." *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (finding that using an odious racial slur, even one time, was sufficiently severe to be actionable). But a "single offensive utterance . . . generally will not create a hostile environment without significant repetition or an escalation in the harassment's severity." *Boyer-Liberto*, 786 F.3d at 284.

DeJoy contends that Smith's claim of harassment based on Gladden's phone call about his submission of a doctor's note for his leave, standing alone, does not establish a prima facie case for a hostile work environment because the one instance is not "extremely serious." (*Id.* at 19.) The court agrees. Not only is this incident not "extremely serious," but there is also no basis to conclude that this claim, on its face and without reference to any preceding conduct, was based on Smith's race. Absent those elements, this claim cannot form an independent cause of action for a hostile work environment.

DeJoy also argues that a claim based on Allegation 7, relating to his 14-day suspension, is not actionable because, as Smith himself asserts, USPS cured the materially adverse action by paying Smith backpay for the time he was out of work. (Compl. at 7; Def.'s Br. at 21–22.) A similar argument was rejected by the Supreme Court in *Burlington Northern Santa Fe Railway Co. v. White*, 548 U.S. 53, 72–73 (2006), and the court rejects it here. Whether Smith's 14-day suspension—even with reinstatement and back pay—constituted a materially adverse employment decision is a question of fact and inappropriate for the court to make at this early stage. While the court recognizes that some courts have determined that a "cured" adverse employment action cannot give rise to liability, *see, e.g.*, *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003), the similarity of the facts alleged here and those determined to be properly

reserved to a jury in *Burlington* caution against a merits dismissal without an opportunity to fully adjudicate the claim. The court will not dismiss a claim based on Allegation 7 at this early stage on the basis DeJoy puts forth.

### D. Evidentiary Matter for Surviving Claims

Given that Smith's claims based on Allegations 5, 6, and 7 will move forward, it is helpful for the court to summarize at this time what evidence Smith may be able to use in support of his surviving claims. A hostile-work-environment claim is composed of a series of separate acts that together constitute an unlawful employment practice, and such a claim "includes every act composing that claim, whether those acts are independently actionable or not." *Green v. Brennan*, 578 U.S. 547, 556–57 (2016) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17 (2002)). Because a hostile-work-environment claim is generally made up of many discrete acts that, taken together, alter the terms and conditions of an individual's employment, they are often prosecuted under a "continuing violation" theory. *Nat'l R.R.*, 536 U.S. at 107–108.

When prosecuted this way, a plaintiff may rely on events that occurred outside the limitations period as evidence to support his claim, so long as at least one alleged incident occurred within the relevant period. *Id.* "[E]ven if a claim of discrimination based on a single discriminatory act is time barred, that same act could still be used as part of the basis for a hostile-work-environment claim, so long as one other act that was part of that same hostile-work-environment claim occurred within the limitations period." *Green*, 578 U.S. at 562 n.7. It is the court's role to determine whether the acts an employee complains of are part of the same actionable hostile work environment. *Nat'l R.R.*, 536 U.S. at 120.

- 14 -

Separate from the continuing violation theory is the Supreme Court's admonition that plaintiffs are entitled to "us[e] the prior acts as background evidence in support of [their] timely claim[s]." *Id.* at 113. Some factors the court considers when deciding if the post-limitation period incidents are part of the same actionable claim is whether they involved the same type of employment actions, the frequency of those actions, and if they were perpetrated by the same managers. *Id.* at 120; *see also Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 236 (4th Cir. 2022) (vacating summary judgment for the defendant because the district court did not give "due consideration" to the prior racial harassment and other discrimination incidents.)

As mentioned above, DeJoy concedes that one hostile-work-environment claim is properly before the court, so any other actions that are "part of the same actionable hostile-work-environment" may be admissible at trial to prove his timely and exhausted claim. *See Nat'l R.R.*, 536 U.S. at 121. Therefore, although some of Smith's allegations are procedurally barred as independent causes of action, the facts alleged in those claims may nevertheless be relevant and admissible to prove his admittedly actionable hostile-work-environment claim. In other words, the court's decision today limits the causes of action that Smith may bring, but not the evidence he may use to prove those claims that survive. Provided that evidence meets the relevant and admissible thresholds for evidence, it may be used to prove his surviving claims.

## IV.   CONCLUSION

For the foregoing reasons, DeJoy's motion to dismiss will be granted, and only Smith's claims based on Allegations 5, 6, and 7 will go forward.

The clerk is directed to forward copies of this Memorandum Opinion and the accompanying Order to the parties and all counsel of record.

**ENTERED** this <u>5th</u> day of January, 2024.

*/s/ Thomas T. Cullen*
 HON. THOMAS T. CULLEN
 UNITED STATES DISTRICT JUDGE
